ROLAND G. FORTIN
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Androscoggin. Opinion, November 24, 1954.

*Edward Beauchamp,* for plaintiff.

*Boyd Bailey, Asst. Attorney General,* for defendant.

SITTING: WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, JJ., THAXTER, A.R.J. FELLOWS, C. J., and TAPLEY, J., did not sit.

WILLIAMSON, J. This is a sales tax case in which sales of "Dairy Queen" products were held to be nontaxable by a justice of the Superior Court upon an appeal by the taxpayer from the decision of the State Tax Assessor. The court ordered (1) the rebate of sales taxes reported and

paid without assessment for the period from July 1951 through August 1952 in the amount of $226.27, and (2) the abatement of a sales tax demanded under a deficiency assessment of $236.35, "made in addition to any sales tax already paid" for the same period. The case is before us on exceptions of the State Tax Assessor to this order. References to the statutes are, unless otherwise noted, to "Sales and Use Tax Law." R. S., c. 14-A (1944), as amended.

The issue on which the decision was based, incorrectly as will later appear, and here argued by the parties, lies in the interpretation of the sentence from Section 10-III, reading, prior to the amendment in 1953, as follows:

"It shall be presumed that the sale of food products ordinarily sold for immediate consumption on or near the premises of the retailer is a taxable sale unless such products are sold on a 'take out' or 'to go' order, and are actually packaged or wrapped and taken from the premises."

We first discuss that part of the decision relating to the abatement of tax. Only questions of law are presented by the exceptions. Under the statute the decision "of said court or justice upon all questions of fact shall be final." Section 30.

We quote from the decision of the justice:

"Evidence was presented that the appellant was engaged in the sale of what is known as the "Dairy Queen" product, which is a frozen milk product dispensed in a number of ways, namely, cones, pasteboard cartons, sometimes with cartons being capped and other times being open. The business was conducted from a building in which the ice cream was made, placed in containers, of one kind or another, and passed to the customer through two windows made for that purpose. The building stands on a lot approximately 70 feet by 100 feet facing the highway and access is had through a driveway from the street onto the property and

out through an exit into the street. The appellant leased a parcel of land next to the one described, where customers parked their cars and came to the building to purchase the product. There were no benches, tables, chairs or settees provided for the customers to use in consuming the product. The facts further disclose as to method of operation that a customer might purchase ice cream in a cone or in a pint or quart container or in an individual container sometimes covered, sometimes not, and sometimes a spoon would be furnished with a small container. The customer would then leave the window with the product thus purchased."

\* \* \* \* \* \* \* \* \* \*

"The product sold by the Dairy Queen may be called 'frozen custard,' 'ice cream' or 'ice milk' but however it may be characterized, it is in a semi-frozen state and cannot be purchased and consumed without some type of container or package. The Court finds that the product contained in a cone or other container is 'packaged' or 'wrapped' within the meaning of (the Act)."

The justice also found the taxpayer "was conducting his Dairy Queen business on the basis of 'take-out' ".

In the bill of exceptions the State Tax Assessor properly conceded "that all sales of frozen milk products made by (the taxpayer) on a 'take out' or 'to go' order, and as evidenced by the sale of covered quart containers and lidded containers, are non-taxable." The final position of the Assessor is expressed in his brief as follows:

"If, in the Court's opinion, the taxpayer's sales are all exempt, the Exceptions should, of course, be overruled. But, if the Assessor is correct that the Legislature directed him to tax sales of ice milk cones, sundaes and milk drinks served in open containers equipped with straws or spoons for immediate eating, not ordered to 'take out' or 'to go', and not 'packaged or wrapped' in a manner to

facilitate transportation, then the deficiency assessment should be sustained in the amount of $31.46."

This amount was reached by deducting the payments made from the tax allegedly due on the above items for the entire period.

The pertinent parts of the Act read:

(a) "Sec. 10. Exemptions. No tax on sales, storage or use shall be collected upon or in connection with:
"    .   .   .
"    .   .   .

(b) "III . . . Sales of food products as hereinafter defined. As used herein the term 'food products' shall, except as herein otherwise provided, include cereals and cereal products; milk and milk products, other than candy and confectionery, but including ice cream . . ."

(c) " 'Food products' also shall not include meals served on or off the premises of the retailer; or drinks or food, furnished, prepared, or served for consumption at tables, chairs or counters, or from trays, glasses, dishes or other tableware provided by the retailer."

(d) "It shall be presumed that the The sale of food products ordinarily sold for immediate
(d) consumption on or near the premises loca-
as tion of the retailer is a taxable sale unless
amended such products are sold on a 'take out' or 'to go' order, and are actually packaged or wrapped and taken from the premises."

By amendment effective August 8, 1953, after the sales were made, the words indicated were deleted, and the words emphasized added. P. L., 1953, c, 146, § 8. The letters on the margin are added by us for convenience in reference.

Clause (c) is found in California in 1939. See *Treasure Island Catering Co.* v. *State Board of E.*, 19 Calif. (2nd) 181, 120 P. (2nd) 1 (1941). See also 139 A. L. R. 392. Clauses (c) and (d) were enacted in Rhode Island in 1947-48. Chapter 2004 of Public Laws of R. I., 1948, amending Sec. 31 of Art. 2 of Chap. 1887 of Public Laws of 1947. So far as we are aware, Rhode Island is the only state with the "presumption" clause (d) since Maine enacted clause (d) amended in 1953.

On careful consideration of the statute, we conclude that the justice correctly ordered the abatement of the tax. We place our decision, however, upon grounds not stated by him or argued by the parties. The nontaxable status of the sales in which we are now interested, namely, sales in cones and open containers, does not rest upon the interpretation given to clause (d) by either party.

The taxpayer and the State Tax Assessor are in accord that if clause (d) were not part of the Act, the sales in this instance would be nontaxable. We may quickly trace such sales through the Act. The sales (1) are taxable as sales of tangible personal property under Section 3, and (2) are exempt from taxation as "food products" under Section 10-III, clauses (a) and (b). They are neither meals nor are they furnished for consumption at or from the facilities listed under clause (c). Disposable straws, spoons or containers do not have the permanence we associate with "trays, glasses, dishes or other tableware." A paper napkin about a "hot dog" was held under a like statute not to be "tableware." The same principle applies to the disposable container and spoon. *Treasure Island Catering Co.* v. *State Board of E., supra;* 47 Am. Jur. 223, Sales and Use Taxes, § 18.

The difficulty arises in that both the taxpayer and the State Tax Assessor read into clause (d) not merely a presumption of taxability, but the creation of a new class of

taxable sale. In brief, they take the view, as did the justice in the Superior Court, that clause (d) with its "presumption" has exactly the same meaning as the flat statement in clause (d) amended, that the sale is a taxable sale, found in the 1953 amendment. The State argues that the "unless" conditions, or at least one of them, have not been satisfied and therefore the sales are taxable. The taxpayer and the justice say the "unless" conditions have been met and therefore the sales are not taxable.

In our view, *taxability* does not hinge upon the existence of the "unless" conditions or any of them. The sentence deals only with a presumption. If the conditions are not met, the sale is presumptively taxable, and no more. The presumption may, however, be overcome and the sale be nontaxable. Clause (d) is, therefore, of importance in the first instance to determine the presence of a presumption of taxability, but not the final fact of taxability.

How are the sales affected by clause (d), or the "presumption" sentence? First: Is there a presumption of taxability? Second: If so, has the presumption been overcome? We answer both questions in the affirmative.

It seems clear that the Dairy Queen products in which we are interested are "ordinarily sold for immediate consumption on or near the premises of the retailer." If frozen milk or a milk drink or a sundae are not products of this type, then we may well inquire what, if any, products the Legislature had in mind. So then, the sale of the product is *presumptively* a *taxable sale.*

The statute does not in the language of clause (d) create a new class of taxable sales. It does no more than say that a certain class of sale presumptively comes within a class of sale otherwise taxable. The sentence is closely related to the provisions for meals and drinks and food for consumption at or from facilities provided by the retailer. The pre-

sumption is created unless certain facts appear, namely, (1) sale on a "take out" or "to go" basis; (2) "actually packaged or wrapped"; and (3) "taken from the premises."

The justice erred, in our view, in finding sales in cones and other open containers were "packaged" or "wrapped" within the meaning of the Act. In ordinary usage a package is a closed container designed for carrying an article. We speak of "opening a package" or "undoing the wrapper." The primary purpose of the cone and open disposable container is not for use in transportation for long distances, but for use in the immediate consumption of the product. They take the place of dishes, glasses, and other tableware.

The choice is not, as the taxpayer would have it, between ice cream in a dish or in a package. There is a third choice —ice cream in a disposable open, and in the case of the cone, edible, container.

The cases cited in the decision of the justice do not, in our view, sustain his position. In both *Mayo* v. *Ar-Tik-Systems, Inc.*, 62 So. (2nd) 408 (Fla. 1953) and *Linnen-kamp* v. *Linn*, 51 N. W. (2nd) 393 (Iowa 1952), the issue was whether the cone and open cup were packages under statutes designed to require identification of iced milk products. The point was identification of product, not type of sale for purposes of a sales tax. In *Mexican Petroleum Corp.* v. *South Portland*, 121 Me. 128, 115 A. 900 (1922), the original package in which oil was imported, namely, the oil tanker, was held broken by transfer into tanks on shore. As in the identification cases, we have here a special problem of packaging in no way necessarily related to packaging under a sales tax.

The justice also found the sales were on "the basis of takeout" and hence were "taken from the premises." "Premises" under the Act means at least the area under control of the retailer on which the sale is made. In this in-

stance the premises of the "Dairy Queen" establishment included the house, the lot on which it stood, and the adjoining parking lot. *Cumberland Amusement Corp.* v. *Johnson,* 150 Me. 304. (*Drive-in Theatre* case.)

The justice may have found, although this is not entirely clear, that consumption of the Dairy Queen products on the premises was insignificant in comparison with the total sales, and hence fairly all sales were "take out" and taken from the premises. Under the Act (Section 30), we consider the decision of fact on this point is final.

The presumption of taxability of the sales remains alive, therefore, for the reason that the sales were not "packaged" or "wrapped." One of the three "unless" conditions was not satisfied, and hence the taxpayer must meet the presumption that the sales were taxable.

We conclude the presumption was overcome by the taxpayer. He proved beyond any doubt, let alone simply overcoming an adverse presumption, that he did not provide tables, trays, or other facilities, and that the sales were not "meals." Thus, the sales were not taxable under clauses (a), (b), and (c) of the Act. The "presumption" sentence, clause (d), cannot breathe the life of taxability into a sale otherwise proven not taxable. The presumption was here destroyed, and the sales were not taxable. The decision of the justice on this point so holding is therefore upheld, but not for the reasons given.

The order for a rebate of taxes paid to the State presents a different problem. With the abatement of the tax demanded under the deficiency assessment, any legal ground for collection of tax from the taxpayer disappears. We are forced to the conclusion, however, that the Superior Court had no jurisdiction to entertain an appeal from a refusal of the State Tax Assessor to rebate payments made, as in this case.

The statute in Section 16 read at the time of the appeal:

"**Sec. 16.** **Overpayment; refunds.** If the assessor determines that any tax or interest has been paid more than once, or has been erroneously or illegally collected or computed, the assessor shall certify to the state controller the amount collected in excess of what was legally due, from whom it was collected, or by whom paid, and the same shall be credited by the assessor on any taxes then due from the retailer under this chapter, and the balance shall be refunded to the retailer or user, or his successors, administrators, executors or assigns, but no such credit or refund shall be allowed after 3 years from the date of overpayment. The assessor shall also have the right to cancel or abate any tax which has been illegally levied."

Amendments to Section 16 in P. L., 1953, c. 72, are not material.

Under Section 16 *supra,* there is no provision for a petition by the taxpayer to the State Tax Assessor, or for an appeal from an adverse decision upon a claim for refund of taxes paid. We find in Section 30 that an appeal is given to "any taxpayer aggrieved by the decision upon such petition," and in Section 29 that the "petition" is a "petition for reconsideration of assessment." Nothing is said either about a petition by the taxpayer for a refund on account of overpayment, or about an appeal from a decision upon such a petition. The only other provision for appeal under Section 30 is in Section 7, relating to revocation of voluntary registration. The Act does not grant authority to the court to order the State Tax Assessor to certify to the state controller an amount to be credited or refunded. The entry will be

*Exceptions overruled as to that part of the decree abating the tax demanded under the deficiency assessment.*

*Exceptions sustained as to that part of the decree rebating sales taxes paid.*

*Case remanded to Superior Court for entry of a decree in accordance with this opinion.*